We will begin with United States v. Rolex Bryan Bruno. We'll hear first from Mr. Adler. May it please the Court, Andy Adler from the Federal Defender's Office on behalf of Rolex Bruno. The Allen charge in this case was beyond the pale, but I want to begin with the law. In particular, this Court's 1975 precedent in Amaya because it provides the framework by which the Court should analyze this case. And what the Court said in Amaya is that because the standard Allen charge is already at the border, any deviation from the accepted language that is even plausibly coercive is impermissible. And one reason the Court gave for that is that we are simply unwilling to accept even the smallest risk of a judge invading the sanctity of the deliberation process and pressuring jurors to give up their conscientious beliefs. Now, that makes this an easy case because we have not one, not two, but as many as five deviations from the pattern that are not plausibly coercive, but are obviously coercive, and I want to go through all five of those. The first one and the most important one— Let me ask you a question about Amaya. You're talking about the standard Allen charge and any deviation, and that's where you're relying on Amaya. But we don't have a standard Allen charge here. So why is Amaya guiding us? Sure. So if you mean like a pure Allen charge? There were a lot of deviations from this, from the standard Allen charge here. In terms of our pattern charge? Correct. I don't agree with that, Your Honor. I think that the thrust of our current pattern Allen charge largely tracks the charge that was given all the way back in the 60s and 70s in this circuit. But at the very least, we know from the Wray decision in 1987, in the appendix to that decision, it quotes the Allen charge given in that case, and a unanimous panel of this Court said, look, if it was up to us writing on a clean slate, we would find this to be coercive. And there's really very little difference between that Allen charge and our pattern. And Amaya, of course, is binding precedent in this circuit, and the framework, the general framework still applies. I mean, this Court in the Brewster case in 2019 cited Amaya. It's still good law. But regardless, the deviations from our pattern here are so substantial that it really doesn't matter. I mean, the first and most important deviation and the language that is not only in our pattern but is in every Allen charge always in this circuit is do not, at all times, you are not expected to give up your honest beliefs about the weight and effect of the evidence. And when you omit that indispensable part of an Allen charge, bless you, Your Honor, it becomes one-sided, inherently coercive. I'm sorry. Go ahead. Well, do you agree that, you know, for instance, in the Cherami case, it says that traditionally the most troublesome feature of the Allen charge is its exhortation to the minority to reexamine its views in light of the majority's argument? And that language that you point out now, isn't it really to get at that? And in this case, the district judge didn't say that language. Sure, Your Honor, but we have so many other things that the district judge did say, and the most important one is forgetting or not reminding them that you are not required to give up your honest beliefs about the evidence in this case. That is critical, and we've never had a case in this circuit where that was omitted. And in the Wray case, Your Honor, with respect to the language you just cited, in that case we didn't have that language. We had language very similar to what we have in our pattern, and the Wray panel said, this is still confusing because I don't know what this means. You're directing it to the majority and the minority, so what is a juror supposed to think? So on top of this failure to instruct the juror not to give up their honest beliefs, we also have no mention that the government bears the burden of proof beyond a reasonable doubt, which is contained twice in our pattern. And then the judge in this case begins the Allen charge by telling the jury, as a formal ruling, that you are not actually hung, you are just confused by the verdict form, when they were not confused by the verdict form because it's not confusing. That's not exactly accurate, is it? The district court judge says this is my understanding, isn't that correct? And the foreperson agreed, correct? The district court judge did not say you are not hung.  The judge said exactly those words. But said this is my understanding. And the foreperson confirmed. No, Your Honor. The judge, this is on page 27, the judge says, I am going to give you a ruling and explain to you why. My interpretation of your note is you are not hung. The foreman, this is previous to that, had agreed that they were hung only on count one. That is before the Allen charge begins. So the judge is telling them. He is essentially overruling their note. He is saying you are not hung. And then he spends two pages walking them through the verdict form, which nobody is confused about. So imagine being a juror in the minority who, let's say, thinks there is reasonable doubt and wants to acquit. And the judge who is telling them, by the way, I have tried 6,000 cases, and my interpretation is you are not hung. What is a juror in the minority supposed to think there? And then he spends several pages throughout the Allen charge expressing his personal view in the first person that he wants a verdict, that I hope, I ask, I urge, I desire you to reach a verdict so that we can conclude this case, so that we don't have to spend four to five days retrying this case. So if you're a juror thinking about that, you are sitting there thinking, well, the judge is not reminding me. He's not telling me not to surrender or compromise my honest beliefs. He's not reminding me about reasonable doubt. He is expressing a personal view that he wants a verdict. The building is named after him. He is in charge of me. He wants a verdict. And he's telling me that I'm not hung when I'm pretty sure that I am. And on top of this, we have the time pressure from the corporate run. The end of our pattern says take all the time you need. Do not hurry. And what we have the judge here doing is repeatedly exerting time pressure. I don't know if I agree with that. In fairness, he does talk about the corporate run, but he tells them repeatedly, you can come back as long as you need. We can reconvene, blah, blah, blah. There are different choices we can do. We want to make it as convenient for you as we can. So I'm not sure I see any coerciveness there. I need you to explain that to me. Of course, Your Honor. So if that was maybe the only thing that we had, I think this would be a close case. But it's not. But with respect to just the timing pressure, we have the judge. Yes, he says you can come back on Friday. But what else is he saying? He is making this a focal point of the jury's thinking. He is telling them that they should be worried about this. They should be worried. And this culminates in his memo to the jury. It tells them, look, what do you want to do here? Because there are a massive number of people coming to downtown. All streets will be impacted. Many will be closed. And if you're a juror thinking about that, that's almost frightening. I mean, if you aren't familiar with downtown Miami, you're – On the flip side, though, these corporate races, I assume it was really large, and we have them in Orlando. The jurors might have already been thinking about it. Couldn't this have been the judge's way of assuaging them that, okay, we can leave today and we still have time to come back tomorrow, which is what he told them. So rather than it being coercive, it could also, I think, be viewed as ameliorating some of their concerns and allowing them to have less time pressure. Your Honor, I think the appropriate way to handle this would have been for him to say, look, we're going to stop at one today. We'll see where we are. We'll stop at one. Of course the judge can do that. Of course. But that's not what happened here. He is repeatedly injecting this. He is repeatedly talking about this over and over. He wants to give them a Miami Herald article that shows all the street closures in downtown. Let me ask you a question. Let me see if I can reframe it a little bit. Just for purposes of this question, no decisions have been made. We haven't talked about this case. But assume for purposes of this hypothetical that we don't agree with you on the scheduling part, okay? Under plain error, what's your best argument for why this was coercive, leaving that part out? Sure. I mean, of course, we don't agree that plain error should apply. But even if it does, I think our strongest point, I think our corporate run argument is, like, fourth down the list. That's not what we're relying on primarily. Our top argument is the omission of the pattern language that no juror is expected to give up your honest belief. And if we just look at that alone, and let's look at binding precedence of this court. Let me ask you to that point on the plain error issue. Do you have a case that says, a binding case that says that if you omit the part about giving up your honestly held beliefs, that that makes an Allen charge per se coercive? No, because that's never happened in this circuit. But what we do have. But you'll show how we can get to plain error without that case. Correct. Yes, because we do have binding precedence that I think make it plain. I mean, first of all, we have the Amaya framework that I led with. But even putting that aside, we have cases like Thagard and Posey from the That's quotes from those cases that no juror is expected to give up their honest belief. On pages 29 to 30 of our initial brief, we cite a half a dozen former Fifth Circuit cases that endorse the Fourth Circuit's case in Rogers from 1961. And that case says that where you omit this admonition, this protective language, that that is going to be coercive. We have Posey, Thagard, Powell, Walker, all these cases that we cite. And then all of this court's modern day precedence, the entire focus of the inquiry in this coercion context is, are you coercing them to give up their honest beliefs? And when you don't tell the jurors that they're empowered to stand firm, that's what's going to happen if you are telling them, look, reconsider the evidence. We can't try the case any better. It's going to be costly. Listen to your fellow jurors. That is exactly why our pattern has this ameliorative language, plus reasonable doubt, plus take all the time that you need. So how does Thagard create such a bright line rule when Thagard, the language that it uses, it upheld the Allen charge given, the Allen charge in that case, which we know through a footnote, was much more closely tracked, our pattern Allen charge. And in Thagard it says, such a charge. In other words, it's referring to the specific factual situation of the charge that was given. So how is Thagard creating a bright line rule when it was simply looking at the facts of that charge? Well, I think it's articulating a principle, which is that we will uphold a charge as long as it makes plain that you don't have to give up your conscientious beliefs. It's not a charge. It's such a charge. So it was looking at the specific language, which is very different from the language of this case. As Judge Kidd had mentioned, the pattern charge carries some more coercive elements than were given in this case, such as telling the minority, hey, maybe you should reconsider in light of what the majority is saying. We don't have that here. We don't have that exact language. But that's a coercive element and has been pointed to as one of the most coercive elements of an Allen charge. I think the most coercive element is what we have in this case, which is the omission reminder. Do not, do not, look, reconsider the case. Fine. But don't give up your beliefs. That language is in every charge. If you look at the former Fifth Circuit cases like Thagard, like Posey, that language, like Allen itself, that language is always included in there. And in fact, it's included in a lot of these charges multiple times. Do not relent. Do not compromise. And look at the verdict that we get in this case. If there's anything, I mean, we can see this is what happened. The jurors gave up their beliefs because they were pressured to do so. The verdict is a classic compromise. It does not, they are rejecting the government's theory. They do not believe the government's witnesses in this case, which said that Mr. Bruno showed up with a firearm to commit this robbery at gunpoint. They are acquitting him of the 924C. He ultimately gets sentenced on that acquitted conduct. This is exactly why the former Fifth Circuit has been so hostile and skeptical of Allen charges because they are dangerous. All right. Thank you very much, Mr. Adler. And you've reserved five minutes for rebuttal. And, Ms. Lloyd, we're going to give you an extra two minutes because we took Mr. Adler over by about that. Thank you, Your Honors. I don't feel like you have to use it all, but, of course, you're welcome to if you want. I hope I don't have to use it, Your Honors. Use whatever you want. Good morning. May it please the Court. Aleah Lloyd on behalf of the United States. The defendant here argues for the first time on appeal that the language the district court used and the circumstances under which it was delivered was impermissibly coercive. But the defendant has not identified any binding precedent holding that the court's language, given in a neutral manner that did not set any coercive deadlines or threaten the marathon to liberation or suggest that jurors give up their own beliefs, and given in similar circumstances, is impermissibly coercive. If we start with the framework that this Court uses, I would like to consider this Court's decision in Scruggs where it says that this Court will uphold Allen charges, however they're given, formally, informally, or whatever, with the pattern, so long as they avoid the pitfalls of coercive deadlines, threatens of marathon deliberations, or pressure for surrender of conscientiously held minority views. And so turning to the issue of the fact that the mission of language regarding honest beliefs was omitted, we believe correctly that, or we believe that that language wasn't necessary here, given that a lot of the coercive elements in a typical pattern charge were removed. It is a little troubling, though. I mean, you know, there's a pattern reason, there's a pattern instruction for a reason, and it wasn't followed here. And we also don't have the Court telling the jury a reminder that it should not return a guilty verdict unless they find beyond a reasonable doubt that there's guilt. And there is a lot of discussion in this sort of run-on instruction, you know, about how the Court would like for there to be a decision, and especially at the end of it, when the Court says, you know, if you don't come to a decision, we're going to have to have other people come in here and do it, and it's going to take more time, whatever the case may be. And that does have sort of a coercive element to it, without any kind of instruction at all to hold on to your honestly kept beliefs. That seems problematic to me. And I will say that I do think that the case law from our predecessor court on this is pretty close. I mean, it's binding precedent, and it seems pretty close for the purposes of a plain error issue, right? Because it definitely does say, you know, as long as the jury is instructed that they should hold on to their honestly kept beliefs, this is not coercive. That's what it says. And so it's hard to say that there's not really any case law that stands for the proposition that you don't have to instruct the jury to hold on to its honestly kept beliefs. And I just want to give you an opportunity to address that. Yes, Your Honor. Well, we think that there was the functional equivalency of that language given by the district court. And I will point, Your Honor, to page 30 in the transcript, where the court repeatedly instructs that the jury does not have to reach a verdict. If they can't reach a verdict after a reasonable time, then you can tell me you're hung. Or later on where the court says, you may talk right now and say what you've just said. We don't think it will do any good, and you can tell me that in five or ten minutes. And, you know, if you truly feel you're hung, let me know. And we think that kind of language is the functional equivalency of saying it's okay. The instructions as a whole here telling the jury it's totally permissible to hold on to the beliefs that you've already articulated to me, just give it one last try. And there's a plethora of ameliorating language that the court throws in there as well, saying see if you can. If you want to deliberate further, just give it this last try, which this court has held repeatedly giving language such that the jurors know that the end is in sight, diminishes any sort of coercion. We think that's very important. And we also think the fact that the judge initially during that first part of the morning directed the jurors back to the initial instructions, reminded them that reasonable doubt was what the standard was here. It was very fresh in their minds that reasonable doubt was mentioned around ten times in the original final instructions. And so when you look at the totality of the circumstances, which is the assessment that is made when we look at Allen charges, we don't think that the language that was given here was coercive in any way, given the qualifying language that the court continuously gave to the jury, as well as the fact that the court reminded them multiple times this is up to you. I'm just asking for one last try. But if you really believe what you believe, no problem. I just want you to give it a last try. See if you can. All of the kind of qualifying language this court has looked at before to find that the language was not coercive. And in the initial instructions, since you're pointing back to those, didn't the judge also say don't give up your honest belief just because others think differently or because you simply want to end the discussions and get the case over with? Judge, you took it right before as I was getting to that point. Yes. That's true, but isn't that a standard instruction that is given in every case and we still put it into the Allen instruction again? The problem is when a judge is telling a jury or when a jury can fairly construe what a judge is saying as you must reach a verdict, it's important to remind them that actually that's not what the judge is saying. So that's why we do that. So I appreciate that it's in there and you're right and you're right to bring that up, but I'm not sure that that in and of itself can always protect against a finding of coerciveness. Well, Your Honor, like I said, we also would point you to the language where the judge repeatedly reminded the jury they don't have to come to a verdict here. They can come back and say we're hung, I will let you go. That language is sort of reading between the lines in my view, and especially in a situation where the government wasn't asking for an Allen charge, the defense was objecting to an Allen charge, and then the judge decides to go down the road of an Allen charge. Going back to Thagard, does what you just articulated really make plain to the jury that they have the duty to adhere to their honest opinions? It's kind of reading between the lines. Is this really making it plain in your view? I think it does, Your Honor, especially when you look at the fact that the judge did not tell the jury they had to reconsider their views or change them if they believe that they were wrong. It did not press any of the jurors to yield to the majority position. It didn't impose any time restrictions on the deliberations. It did not even instruct them that they had a duty to agree. The judge simply asked them to please keep deliberating, think about it a little bit more, give it one last try, and I think another important thing to think about here for this jury is that they did continue to deliberate for two more hours after this, far past the time that the judge gave them. They, in fact, sent the memo back saying we want to continue deliberating a little bit longer and maybe come back tomorrow. When you have a situation like this where the jury itself is making the decision to continue deliberating and informing the court we want to keep deliberating, that certainly shows, especially on plain error review, that there's not really any coercive effect of the judge's instructions. And I think you can also see that with the split verdict that was given. This court has held and demoralized. When there's a split verdict like this, in fact, under a very similar factual pattern where there are three counts of all charges of money laundering with the exact same scheme and the jury found an acquittal on two of those counts but found the defendant guilty of the other one and there was an inquiry about the jury about leniency or what would happen if they found the defendant guilty or not guilty, this court determined that that split verdict showed actually that the jurors were not intimidated or coerced by the charge but instead were exercising their own leniency or coming to a compromise without sort of any intimidation by the judge. And we have that exact same case here where the jury sent a note saying what would happen if we find him not guilty? Will this defendant get to go free? And instead this, I think, persuasively shows that the jury reached a compromise, not that they were coerced or intimidated, but that they deliberated for two more hours, plenty of time as this court's precedents have held, for jurors to change their mind or come to some sort of decision without coercion and rendered a verdict that in their mind made sense given the facts of this case. Does Thagard create a bright-line rule that all Allen charges must include a reminder for jurors not to give up their honest beliefs? No, it does not. And I think what this court has held multiple times, even post-Thagard, is that what the instructions cannot do is pressure or suggest that the juror could give up their honest belief. And here we have a situation where the instructions as a whole made it clear that the jury being hung was permissible, that whatever their beliefs were when they came out to the judge could be maintained and they would get to go home with no issues of violating their oath or violating their duties or that it was wrong for them not to come to a jury verdict. In fact, he just said, I think the language that I think is very persuasive is just give it this one last try. The jury knew directly from the judge that if they went in and deliberated one last time and came back and said judge, we're hung, that they were going to be done. That's exactly how clear the judge intimated that to them. And I think also that when you look at the rest of the circumstances that this court considers, the fact that the deliberations had gone on for four hours ahead of or about four hours before the charge was given, that the judge didn't know the split or had a jury pull, the fact that the deliberations continued for about two hours after that, all of those circumstances continues add to the diminishment of any potential coercion. And also, given the fact that we're on plain error review, the fact that the defendant didn't object after this instruction was read and the judge gave the defendant an opportunity to do so. And instead, the defendant said, no, judge, if they come back, tell them it hasn't been enough time. There was an opportunity, and this is why plain error is so important, to cure this issue if the defendant really thought any of this language was coercive. He could have objected at that moment and said, judge, you didn't read the pattern charge. You didn't tell them not to give up an honest belief. You didn't remind them of reasonable doubt. All of these issues that they're bringing up now for the first time on appeal, never made a word of that to the judge after the charge was read out to the jury. And that's why plain error is important, because under this court's precedent, if you have the ability to cure some of the issues in plain error but didn't take that, then plain error, even if you find that there was some sort of coercion with these instructions, the defendant's burden hasn't been met. And at least turning to the corporate run, I just want to reiterate that the jurors were the ones who actually brought up the issue of the corporate run to the judge, and they were the ones asking the judge to take it into account. So when you have instructions or the judge giving, you know, language that helps the jury keep updated about the schedule and the availability of the courtroom, it's not coercive to give those kind of instructions either. So for all those reasons, the government thinks plain error review or not plain error review, given the totality of the circumstances and the judge's language, that this Allen charge was not coercive, and we ask that you affirm if you have no further questions. Thank you so much. All right, we'll hear again from Mr. Adler. You have five minutes. Let me start, if you don't mind.  Where Judge Branch left off, because I think she asked a very good question, and that is when we're on plain error review and we have to have, and I know your position is we're not on plain error review, but for purposes of this question, when we're on plain error review and we have to have a case that draws a bright line for whatever the rule is that we're applying, how does that affect your client's position? I don't think it does. First of all, an error can be plain or obvious if there's not a case directly on all fours, and that's, I mean, this is obviously erroneous, this Allen charge. There is nothing like this anywhere. But we also have all of these Fifth Circuit precedents that are still good law, including the AMAYA framework, including the half a dozen former Fifth Circuit cases that endorse the Rogers decision from the Fourth Circuit that say it's one-sided if this admonition, this protective language is omitted. We have all of our current cases that say, look, this is the question. Are they being coerced, pressured to give up their honest beliefs? Then we have all of the other circumstances that we have in this case, and the big one I want to come back to is you are not hung. If a judge tells a jury that the jury just said we are hung on count one, the first thing the judge says is, well, I'm ruling that you're not. What is a juror supposed to think? Yes, the judge can say, well, give it another five or ten minutes and then you'll be hung, but he's telling the jury, no, no, you're not currently hung. And if a jury thinks, if you're a juror and you think, well, I'm convinced that there's reasonable doubt in this case, and this judge, who's got the building named after him, presiding over 6,000 trials, comes up and says, no, no, no, you're not. Give it another try. We're not arguing that the judge is telling them that a hung jury is impermissible. We're telling them that what he did here, he effectively pressured them to give up their beliefs by making all of these comments. You are not hung. I'm desiring you to reach a verdict so we don't have to try this case. It's a joint effort at that point. And the jurors, look, I mean, the reality of the situation is when you come into federal court, the building is named after the judge, you are deferring to him. He is in charge of you. He gets to call the marshals on you. He gets your lunch. So I hear what you're saying. I am very troubled by the instruction. The problem if we're on plain error review, and I think you've sort of addressed it, but I just want to make sure I've given you the chance to fully address it, is our case law says there can be no plain error when there is no precedent from the Supreme Court or this court directly resolving the issue. And so the question is, do Thagard and the others directly resolve the issue? And I think your position is that they do. And so I just want to ask you to focus on why you think they directly resolve the issue. Yes, Your Honor. So I'll go back to the Amaya case because I think that is really an important case here. I understand the charge in that case was not identical to our current pattern, but the principle that it established, that Allen charges in general, not the charge in that case, but in general are at the border because you are telling a jury to reconsider. That is pressure. And so if you are going to start getting cute here and start deviating from this language that is really already at the line, you have to do it in an ameliorative way. If it's arguably coercive, that is not okay. And here it's not arguable. It is obviously all of these elements we're talking about are coercive. And if you want to put aside the corporate run, fine, although I don't think you can because we have – I would encourage the court to focus on the nine-minute gap. The government talks about the two hours after the Allen charge. We actually think that underscores that the jury was indeed very much hung when the judge was telling them that he was not because despite this charge, they're still struggling. They still can't reach a verdict. They're probably back there talking about what did this judge just – Right, but under the Brewster factors, the longer it takes after the court gives an Allen charge, the less coercive it's considered. Yeah, I mean I don't – I view it otherwise here because I think it underscores how deadlocked they actually were when the judge was telling them that they weren't. But if you want to go that way, then we look at the nine-minute gap after the memo goes back to the jury. They get a memo. Massive numbers of people are coming in. We've got to get out of here if you want to recess and not come back on a Friday. I understand they can, but nobody wants to. And if you're in the minority and the majority of jurors are saying let's go, like looking at their watch here, let's get out of here, and the jury comes back nine minutes later after the judge is telling you massive numbers of people are coming, all streets will be impacted. He had just talked at length about a Miami Herald article. He had gone on at length. It's true. The foreman brought it up originally, but the judge made this a focal point. The jurors should not have to be worried about a corporate run. They should be focused on the verdict. And our case in Gros does say it's permissible to keep a jury updated about a schedule as long as the judge makes it clear that there's no minimum time limit on deliberations. I would just point that out. But I'm going to ask a question of you. I think you'll agree, but I'm just going to go ahead and ask it just to make sure. Do you agree that whether an Allen charge is coercive depends on the totality of the circumstances?  Okay. And I just want to use my last couple of seconds here to push back on the idea that plain error applies. We had no opportunity to cure this, right? We object to even giving the pattern. Okay. The judge tells his law clerk, go get the pattern. I'm going to read the pattern. We object. We object to the pattern as coercive. And then he comes back unexpectedly and goes way beyond the pattern in a coercive way. What are we supposed to do at that point? You were given an opportunity by the district court after the jury had gone back into deliberations to object, and you did not do so, correct? I don't think he expressly – I mean what – even if that were true, how could we cure it? The only way would be to bring the jury back out and say strike everything that I just said. Pretend that it did not happen. And there are cases that acknowledge that it's really impossible to unring the bell here once the judge has done this. There's a case from this circuit in 1976 called Taylor that says you can't unring the bell. There's a Supreme Court case called Brasfield on plain error that says you cannot unring the bell from 1926. So there are precedents out there. And as a practical matter, we are just trying to navigate this very difficult process in front of a hostile judge who is going off script unexpectedly, and we really did the best we could. And that's why we didn't object afterwards because we thought we already had preserved it. What about our U.S. v. Hill case that says it's plain error if you fail to object to the content of the Allen charge? And in that case, the defense counsel had objected to the court's decision to give the Allen charge but not to the substance of the charge as written or read. So I don't believe the government cited that case, so I'm not familiar with it. But what I'm going to say is I bet that case didn't have a circumstance where the judge is telling you we're going to read the pattern and then he doesn't. And I think that's a different situation. So the judge said, do you have any objections to the general content that I'm about to read? That's what happened here. And we thought he was going to read the pattern. And we said, don't even give the pattern. They haven't been out long enough. And by the way, before the government's position at this time is just declare a mistrial because the prosecutor knows based on the friendly questions that have been sent back that which way the wind is blowing here. And so it's the government that wanted the mistrial. We wanted them to keep going. The judge is going to read the pattern. He does whatever this is instead. I think under any standard, this is obviously plainly erroneous. There's not going to be a precedent on all fours because it's a totality of the circumstances test. And this is a truly unique and egregious case. Thank you very much, Your Honor. Thank you, counsel.